Mr. Chigroux, we're ready when you are. Thank you, Your Honor. Good morning. May it please the Court, my name is John Chigroux and I'm here on behalf of the appellant, Crowley Maritime Corporation.  The District Court's decision in this case should be reversed. It's erroneous for two principal reasons. First, the Court's principal holding that Crowley did not timely report or timely give notice of a claim, capital C, against an insured person under the National Union policy is contrary to the established facts as recognized by the District Court itself that notice of a claim, capital C, was provided by Crowley in April 2008 and that notice of a claim was also provided in 2013 when Mr. Farmer's plea offer was reported to National Union. And those notices of claim fall well within the runoff period deadline, which did not expire until November of 2013. So either notice establishes that a notice of claim was provided by Crowley before the expiration of the runoff period and the District Court's opinion that there was no timely notice of a claim with respect to the DOJ antitrust investigation prior to November 2013 is wrong. That does not get you very far because our Office Depot case holds that I call it the plea offer claim February 2013 is not retroactive with respect to coverage. So that doesn't get you very far, does it? Well, Your Honor, the Office Depot case is very different factually and is not apposite in this case. Here, Crowley in 2008 gave notice of a claim, not a notice of circumstances. So in 2008, Crowley presented what it intended, understood, and asserted to be a notice that a claim had been made against an insured at that time. In Office Depot, the insured provided what it characterized as a notice of circumstances. So it acknowledged that there had been no claim against an insured at that point in time. So in Office Depot, the insured then retroactively tried to convert pre-claimed defense costs into covered defense costs by asserting the Relation Back Doctrine. But here, Crowley's position all along has been that there in fact was a claim asserted against Mr. Farmer in 2008. You just didn't know it in 2008. It's your position. Well, they were aware that there was an affidavit and aware that the affidavit No, but you didn't know who it was against. It might not have been against an insured person. Well, the affidavit, we didn't know what the contents of the affidavit were. No one knew at that time. That's all I'm saying. You didn't know in 2008 that this was in fact a claim. We didn't know for sure what the contents were, so we couldn't confirm that it was a claim. You didn't know that it was a claim in 2008. I mean, let's recognize the issue for the difficulty that it presents. It is a difficult issue, yes, because the affidavit existed, it was known, and it was presented as a claim and asserted by Crowley as establishing that a claim had been made against Mr. Farmer. But they couldn't prove it at that time. Y'all did everything you could to find out the content. Correct. And they said, oh, no, don't speculate. They told the panel, don't speculate. That'd be wrong. Correct. Correct. And, Your Honor, I think that, I mean, a key issue here is the difference between whether Crowley could have proven its entitlement to coverage in 2008 without the affidavit, but that's very different from whether it had provided notice of a claim. Let me ask you this. I understand that you argue you're distinguished from Office Depot for the reason you say. But suppose we find and conclude that your April 25, 2008 notice was not a claim, notice of a claim, but was, as the insurance company said and the district court found, a notice of circumstances. Then, with respect to the February 2013 plea offer claim, you're right squarely within the facts of Office Depot. Correct? If there was no claim until 2013, then Crowley cannot recover the defense costs prior to the time the claim was made. Correct. And, frankly, I don't see in your brief an argument based on the 2013 plea offer claim. I mean, the argument you're making right now, I did not see in your brief. The argument that notice was given in 2008? Oh, no. You make that argument, but you don't try to tie it to 2013. Well, correct. We don't. Crowley has never relied on a notice of circumstances and relation back argument. Our principal position, which the district court didn't address. So you acknowledge that you waived that, any reliance on relation back? Well, what we said in our briefs, Your Honor, was that. . . I know what you said in your brief, and I know what you said in your reply brief. This is treated as. . . I'd like to know right now, are you or are you not waiving reliance on relation back, Section 7C? We're not waiving reliance on that. What we've said is that under these unusual circumstances, to the extent National Union chose to treat this as a notice of circumstances and repeatedly said in correspondence, if you have additional evidence at any point in time to support your claim, we will accept that, that under these unique facts, we should be allowed to recover the defense costs going back to 2008. But, again, the industry. . . Let me ask my question again, and I would like, if there's any possibility, yes or no answer. Are you or are you not relying upon relation back, Section 7C? No. We're relying on the notice that was given in 2008 as establishing that notice of a claim was given at that time. Okay. And because notice was given. . . And the district court acknowledges this in its opinion. And docket 53 at page, I believe it's page 4, the district court acknowledged that Crowley provided National Union with notice of a claim in 2008. And National Union itself acknowledged at that time, contemporaneously, that Crowley had submitted these materials as notice of a claim. And that's in docket 36-6 in National Union's acknowledgment letter. And so Crowley did exactly what it was supposed to do under a claims made and reported policy. When it was aware of something that it understood and believed to be a claim, it gave notice to National Union. The Gulf insurance and Jennings cases that are cited by National Union don't require anything more. They require that the insured give the insurance company, apprise the insurance company of the claim. And if Crowley had not provided notice in April of 2008, the time that it was aware of the investigation, aware of the search warrant, and aware that the search warrant had been obtained by virtue of an FBI special agent affidavit that was submitted to the court and kept under seal, undoubtedly National Union would have asserted that a later notice given after the policy period would have been untimely. So Crowley did what it was supposed to do. And as this Court's decision in H.R. Acquisition demonstrates, there doesn't need to be service of the affidavit or the claim document on the insured in order for that to be a claim, and there doesn't have to be a receipt by the insured of that document at that time in order for it to be a claim. The policy language doesn't require that. A claim existed in 2008 because there was a writing in the form of the affidavit that identified Mr. Farmer as someone against whom a criminal proceeding may be brought. The unfortunate, unusual facts here are that that document was under seal for a very long time and unavailable to Crowley. But when Crowley was able to obtain the document, that proves that what Crowley said in 2008 and has said all along is correct, that in 2008, April 2008, a claim, in fact, had been made against Mr. Farmer. And the H.R. Acquisition case makes very clear that policy drafters know how to include a requirement of service or notice in order for something to qualify as a claim. And there's no contrary authority from National Union here. In that sense, this case is not different from, say, a key TAM pleading where the insured may become aware that a key TAM complaint has been filed albeit kept under seal. It can provide notice to the insurer that the complaint has been filed. And the insurer may dispute whether the insured, based on that notice, has established that a covered claim has been asserted or that what's been notified is covered by the policy. But there's a difference between disputing coverage, which often happens and often isn't resolved for years until after the notice is given, that's very different from saying that the notice was not given. Let me tell you why I have trouble with your argument. And I'd love for you to think about it and help me because I think all the equities are in your favor in this case. But for the life of me, I cannot fit your case into this policy language. And let me tell you what my problem is. You cannot, under this policy, it seems to me, have a claim, in quotes, until you have the identity of the person. And you can have what you would like a later notice that, in effect, is retroactive. You can have that under the 7C and under the runoff endorsement. And under Section 5 acknowledges you can have a notice even after the discovery period. But both Section 5 and the endorsement, the runoff endorsement, which do allow this late notice, depend on relation back. And the problem is, there are two problems with relation back. One, you've waived it. And two, I'm afraid, for a very complex reason, you don't qualify anyway under the relation back. So the language you need in order to get coverage is language that would be to the effect that you could have a notice of circumstances and then you could later have the actual proof of a claim. You could have a notice of circumstances which didn't quite notify the company of a claim. And then later you could, in effect, prove that that situation was, in fact, a claim. That's what you need, and I can't find that in the language. The only relation back depends on the relation back concept in Section 7C. Let me go. I'll use time to address that now since it's in front of the court. The critical point here is that whether the affidavit was or was not a claim in 2008 does not depend on when Crowley was able to obtain the affidavit. The contents of the affidavit either rise to the level of being a claim and that they assert that Mr. Farmer is a person against whom criminal proceedings may be commenced. They either did that or they didn't do that, and they either did that in 2008 or they didn't do that in 2008. That's not the whole story. For a claims-made policy, you have to have both the claim and the report to the company. And you can report to the company after the discovery period only pursuant to 7C relation back. But here we have both because the affidavit, once unsealed, establishes that, in fact, there was a claim made in 2008. It was sealed, so we didn't have access to it. But the claim, in fact, was made. The contents of the affidavit in 2008 establish that Mr. Farmer identified him as a person against whom a criminal proceeding might be brought. So we have step number one. Step number two is was there notice of that claim given to National Union in 2008? The question isn't whether we proved in 2008 that what we were giving notice of qualified as a claim or satisfied the coverage requirements or entitled us to coverage. The question is did we give notice, did we apprise National Union of the existence of this document, of the existence of the investigation at that time? In effect, you're saying a notice of circumstances can ripen into a claim. It's not a notice of circumstances because, again, at the time, Crowley said we're giving you notice of what we understand and believe to be a claim. National Union acknowledged it. I understand your argument, but why is your argument not barred by res judicata? Because that very whatever was before the insurance company in 2008 was litigated in the arbitration. Well, for all the reasons that the district court said, res judicata didn't apply, which have nothing to do with whether we did or did not give notice of the claim in 2008. The claim, the critical document, the affidavit was not available, so it was not presented to the arbitration panel. They didn't consider it. They didn't make any ruling on it. National Union itself argued, and this is similar to the Plemming case, there is evidence in the record about this affidavit, but this panel should not consider it in making a decision as to whether there is coverage because it's unavailable. And as the district court correctly held, what we have here are two separate breaches based on separate conduct occurring at different times. The first in the arbitration was a consideration of whether National Union had breached by not paying defense costs based on materials that were then available, which did not include the affidavit. The second breach, the second separate cause is what was before the district court, which is once the affidavit was obtained and presented to National Union, did National Union breach by not accepting coverage and providing for the defense costs at that point in time? Okay, thank you, Mr. Shugrue. We took you over on that important part, and we appreciate your answer, so we won't hold that against your time. You'll have five minutes in reply. Thank you. And if you all need an extra few minutes, we'll treat you the same way. Mr. Duffy. Thank you, Your Honors. May it please the Court, I'm Michael Duffy from Peabody and Arnold, on behalf of the Appellee National Union. With me is Jason Bloom from the firm of Leidecker Diaz. Your Honors, the decision of the district court in this case was completely correct, and it should be affirmed. Just so we understand, you're not saying that Crowley should have done anything they didn't do other than agree with your position when you rejected their claim, right? I mean, they did everything they could do. The question is whether, under the policy language, that entitles them to recovery. We're not relying on a claim that they did something wrong here. Or failed to do something they could have done. They could have tried to get a copy of the affidavit earlier. They didn't try. They didn't try. We don't know what would have happened. But we're not relying on that as the basis of our argument. How do you try to get an affidavit in a federal criminal investigation? Well, Mr. Farmer got a copy of the affidavit in 2013, and he could have asked the judge if he could show his insurance company. It would have been a discretionary. Wait a minute. I don't think Farmer. Farmer didn't have a copy of the affidavit in 2013. All he had was the plea offer. No, Mr. Farmer, after he was indicted, he got the affidavit. But it was under a confidentiality order that he wasn't supposed to disclose it. Because he was challenging the search. Farmer had it, but Crowley did not. Crowley did not. That's right. So they should have. . . How do you get it from Farmer? Well, sometimes claims just aren't covered. That was my question. You're not saying that Crowley didn't do something they should have done? That's not the basis of our claim. We're saying it's just not covered. Because this is a. . . It sure ought to be covered. But as I was talking to you, I can't find out how. I don't think I would agree with that because two things have to happen for a claim to be covered. They could have paid to have it covered. Isn't that your position? I'm sorry? It's a bargain purchase to sophisticated parties. If they had wanted this kind of thing to be covered, they could have purchased coverage for it. That's right. I mean, this is a contract between large businesses, and it says what it covers, and it covers what it covers, and it doesn't cover what it doesn't cover. And it's a business transaction. It's more likely that this was just something that nobody ever thought of. I'm sure that's true, Your Honor. No one ever thought about this scenario. But in order for there to be coverage, two things have to have happened. There has to be a claim made against an insured within the discovery period, and that claim against an insured has to be reported to the insurance company within the discovery period. And that didn't happen here. We have a six-year discovery period. November 1st of 2013 is a hard outside date for reporting claims for the first time. Unless there is an exception, and that is if you can qualify under Relation Back. If you have Relation Back, that's right. But Relation Back applies to claims that are first made after the date of the notice. And they're claiming that the claim here was made before the date of the notice. So on its face, Relation Back wouldn't apply to this situation. And if a claim is made after the date of the notice, as we know from Office Depot, coverage is only in a forward-looking basis. That's why when he was indicted and he got the plea deal, we paid the fees from that point forward. Actually, I was on that panel, and I think my sister, Judge Martin, was on that panel too. I'm not sure it was correct, but he hadn't argued that that was an incorrect, unpublished decision. And furthermore, it was probably barred by race judicata anyway. Well, yes. I think in the first instance, factually, there was no claim reported in 2008. We have to look at it. Even though they called it a notice of claim, that's not what it was. They submitted two things. They submitted the search warrant. They submitted a grand jury subpoena. Now, we know that those are not by themselves claims, and Crowley is not even arguing that they are. The only additional notice or information provided in 2008 was a statement that the affidavit is under seal and therefore its contents are unavailable and nobody knows what it says. That, even without race judicata, is not the report of a claim against an individual because they didn't tell us in 2008 that any individual had been identified in writing by the government as a person who might be charged. They didn't tell us that because they didn't know it. They had no idea what the affidavit said. They had no idea at that time whether it was a claim or not. And if you don't know whether it's a claim, you can't say that you've reported a claim. You have to be able to identify the claim before you can report it, and they didn't do that. In addition, other than the merits of the fact that there was no report in 2008, we've already litigated this question. We had an arbitration in 2012, and the panel ruled in 2013 that as of that point, there had been no report of a claim to National Union, and therefore National Union did not have to pay the fees incurred starting in 2008, running up through the date of the award in 2013. The district court properly found that the arbitration award is race judicata on that issue. It's exactly the same issue that we have here. The issue in this case, according to Mr. Chigroux, is whether or not in 2008 a claim was reported to National Union. That was the exact issue that was submitted to arbitration, and we have a decision from the panel which says no. That is saying the exception to race judicata is new evidence. The new evidence is what the affidavit in fact contained. And your position, as I understand it, is that doesn't matter because the question is what we knew in 2008 it contained, not now. That's right. The question is what was reported to National Union in 2008. And whatever they found out in 2015, it's interesting, but it doesn't change what was reported to National Union in 2008. In 2008, they did not report that Mr. Farmer or anybody else had been identified in writing. They didn't know that until 2015. The fact that they found out about it seven years later doesn't change what they reported in 2008. It doesn't expand what they reported, and therefore it doesn't change the result of the arbitration, which was that as of 2008, no claim had been reported to National Union. It's exactly the same cause of action because what they have to prove is the same thing. The question was has a claim been reported, yes or no. As of the date of the hearing in 2013, they said no. That, I think, is as far as we have to go to establish that Judge Cargan's decision is correct here. If no claim is reported in 2008, then there's no coverage for the fees that were incurred starting in 2008. I bet you're going to go further, though, aren't you? Yeah, I am. Because there are two things that have to be proven. One is that a claim was reported, but also that a claim was made. And I think I need to say some things about that because they're saying that a claim was made on April 16th, which is the date the affidavit is filed. Even though on April 16th, it's not just that people didn't know what the affidavit said. They had no idea that there even was an affidavit. At that point, they were still blissfully going ahead price-fixing with the other companies. I mean, you don't get a search warrant without an affidavit. Yeah, that's right. So it's obvious that there is an affidavit. But they're saying the claim was made against Mr. Farmer on April 16th. The search warrant wasn't executed until the next day. So on the 16th, they didn't have any idea that there was an affidavit. You really can't plausibly say that a claim was made against someone if he has no idea. Because under a claims-made and reported policy, the date when a claim is deemed to be made is what governs when it has to be reported. And if we were to say that a claim can be made against an insured even though he has no idea, you would be putting on the insured an obligation to report things that he knows nothing about. That may be what Crowley wants you to do in this case, but it would be a terrible decision for insureds in general if this court were to say that insureds have a duty and obligation to report things they don't know anything about and if they don't do it, they lose all coverage under the policy. Florida law says you have to construe the policy in order to produce a practical, reasonable, workable result. And that's what we're trying to do here. We're not trying to read language into the policy. They're trying to read language out of the policy. Because two things have to happen. You have to meet the definition of a claim, and you also have to show that the claim has actually been made against a person. And by focusing only on the definition, they're ignoring the requirement that the claim has to be actually made against a person. And if we look at the definition of claim under Part 1, which is a written demand for relief, that also has no receipt requirement built into the definition. But when I asked their own custom and practice expert at his deposition how do insurers handle that, he said, oh, well, every insurance company knows that a claim isn't made under Part 1 until it's received. Well, I think that's right, but that's exactly the argument that we're making about Part 3, that it makes no sense to construe this policy as saying that a claim is made when somebody has no idea. Let me ask you this question. This is the closest that I could come to figuring out a way that there should be coverage here. And I don't think your opponent has argued it, but I'd like to know what your response is. Granted, there was not a claim as of April 25, 2008, and we know that as a matter of res judicata because the arbitration found it. But the February 2013 plea offer came after that, is not barred by res judicata, and in fact was recognized as a claim. It did identify Pharma as someone against whom a criminal proceeding may be commenced. Now, that arguably is the same claim as was revealed when the affidavit was unsealed. So you have a claim which was reported. It was not only made, but reported to the insurance company within the discovery period in February, or I think a little after February, but in 2013 before the discovery period expired. And then you have proved that that claim actually is the same claim as the one that was revealed in 2015 when the affidavit was unsealed. My position would be that when Mr. Pharma received the plea deal, that was the first time on which a claim was made against him because that was the first time there was ever a writing that he got which was reported to the company showing that he was a person who might be charged. Under Office Depot, coverage is only forward-looking and not backward-looking. There was no prior claim reported because all they said is that we don't know if there's a claim or not. But the affidavit, when it was revealed, revealed that that very claim, that same claim, actually existed as far back as April of 2008. If we assume that that's the case, it still wasn't reported to National Union. There still has to be a report. But it was reported, that same claim was reported in 2013 within the discovery period. The claim that we're, no, I don't think it is the same claim. The investigation becomes a claim when someone is identified and he was identified for the first time when he got the notice. The coverage then is only forward-looking. It's not the same claim as a claim that was reported earlier because there was no claim reported earlier. I think, I'm afraid that I agree with you. It is not the same claim as one answer. And the other answer is you can't qualify under the relation back for two reasons. That's right. And it doesn't qualify. And I just have a minute, but I want to briefly jump to the statute of limitations because it's related to this issue. We have a five-year statute in Florida. It runs from the date of the breach. There's no discovery period. It runs from the date of the breach regardless of when the breach is discovered. So it doesn't matter whether you know it or not at the time. In response on the statute of limitations, they say, well, the breach that we're talking about happened in 2015. But the only way you can say that the breach of contract happened in 2015 is to concede that the claim was first reported to National Union in 2015. Because under this policy, the reporting of the claim is the event that triggers coverage and creates the obligation to pay. So in effect, by arguing that, in fact, that's exactly what they say in their opening brief below on the summary judgment issue. They say the statute of limitations for breach of contract could not have begun to run before the triggering event for coverage was presented to National Union in a denied coverage, all of which took place in 2015. And you're saying they're on the horns of a dilemma. They are. I'm saying that in order to avoid statute of limitations, they've essentially surrendered on the merits because they've had to admit that the claim was first reported to National Union in 2015. It's outside the discovery period. And exactly for the reasons that Judge Cargan found, that means that National Union should prevail. Thank you. So they get to pick which area they lose on is your position. They don't actually get to pick. They lose either way, but they don't get to pick. They pick because it was first reported in 2015. Even if they were right, then they would just lose for a different reason. I have a question about something you say in your brief. On page 6, you say National Union ultimately paid approximately $2.965 million in defense costs incurred by Mr. Farmer from February 18, 2013, through the conclusion of his trial. That's not consistent with the number I understood. Where does— I think there are two different numbers. There is an indication of $2.5 million. Those are the fees that were incurred from 2008 through 2013. Those are the fees that we're talking about here. And then the fees from 2013 through the end of the case are the ones that we paid. So there's two different buckets of fees. There's pre-2013 and post-2013 fees. What about the number $722,000 that you all paid in defense costs? I— You don't know that number? I'm not sure. Where's that number coming from? $722,000. We paid almost $3 million in defense costs. Okay.  Thank you. Thank you, Ms. Shugrue. Mr. Duffy, appreciate it. Mr. Shugrue, you're next with five minutes. Thank you, Your Honor. Accepting National Union's position and argument here would mean that any time an insured gives notice of a claim, of a complaint, of something it believes is covered under an insurance policy, the insurer can manufacture a late-notice argument by simply disputing that what was noticed, in fact, qualifies as a claim, as something that's covered under the policy. And that's exactly what's happened here. National Union has taken a substantive issue over whether the affidavit was a claim and turned it into a late-reporting or late-notice issue. And that's simply not the case. When Crowley gave notice to National Union in 2008, it gave notice of the investigation, the search warrant, which referenced the affidavit, all as what it understood, believed, and asserted was a notice of a claim as defined in the policy. Crowley repeatedly asserted in its notice correspondence with National Union over the course of several years following that what, in fact, happened was a claim against an insured person, that there was a writing that identified Mr. Farmer as a person against whom a proceeding may be commenced. Crowley simply could not obtain that writing to prove its case to National Union because, through no fault of its own, the document was under seal. National Union itself acknowledged that this was submitted to it as a notice of claim, capital C, in 2008. The arbitration panel stated repeatedly in its decision that Crowley gave notice of claim to National Union in 2008. The arbitration panel did not decide that Crowley had not timely reported or timely given notice of a claim under the policy. The arbitration panel decided only, which is exactly what the district court correctly ruled, that there was not evidence submitted to National Union up to the time of the arbitration to prove that a claim, in fact, had been made in 2008. We want to talk about what a reasonable interpretation of the insurance policy is here and how policy should not be interpreted to reach an absurd result. How absurd is it that Crowley in 2008 says, we have federal agents searching our premises, there's a DOJ investigation accusing us of criminal antitrust violations, there's an affidavit sworn by an FBI agent that serves the basis for probable cause to search our premises, we have advised our insurer that there are subpoenas, there are grand jury investigations, other people that are involved in this alleged conspiracy have been indicted for being investigated. And the insured person being investigated is? Is Mr. Farmer. And Mr. Farmer, he very well knew that he was the subject of an investigation. Oh, you all didn't tell them that. We did. You told them in 2008 that Farmer was the one being investigated? In 2008, Crowley's notice specifically identified Mr. Farmer as among officers of Crowley that had been identified in writing as persons against whom a criminal proceeding may be commenced. That's in the initial notice submitted. And the arbitration held that that wasn't enough to identify him under the claim definition. That's correct. There's a difference between whether we notified National Union of a claim and whether we could prove that there was a claim at that time. And those are different things. I acknowledge that. And you can have a late notice, but you can have a late notice that relates back with respect to coverage only if you can qualify under 7C. The notice wasn't late. The notice was given right after the search warrant was served and right after the search warrant identified the affidavit. Crowley gave notice to National Union of the affidavit. The affidavit is identified on the face of the search warrant. So the document that is the claim document that identifies Mr. Farmer as a person against whom criminal proceedings may be brought, which they certainly were, notice of that document was expressly, specifically in writing, given to National Union in 2008. Now National Union, I understand, correctly so, legitimately so, according to the arbitration panel. We don't dispute the panel's ruling. We don't say that it should be reversed. The panel decided that what National Union was given, the materials that were available to Crowley at that time, didn't prove what Crowley asserted, which was that there is a claim against Mr. Farmer, but there can be no legitimate dispute. The panel, the arbitration panel said a little bit more, said that was not a claim. What was submitted to the company in April 2008 and actually through January of 2013 did not constitute a claim. That's what the panel said, that the materials submitted to National Union did not establish the existence of a claim. That means you don't have a claim as a matter of res judicata. You've got to show a report notice to the company of a claim within the discovery period expiring November 1, 2013. And if that panel, if the court takes that approach, then you can have a situation where the insured is sued on the last day of a policy period, is notified that there's a complaint filed against it, but if it doesn't give notice, if it doesn't actually provide the complaint document that establishes that there was a claim until two days after the policy expired, then there's no coverage. That's exactly right. And if you want more, you bargain for more and get more in the policy. But this policy in other parts of the definition of claim said it's only a claim when it's served or when it's received. That's not language that is contained in this portion of the definition of claim, and that's what the HR acquisition case says. And in fact, a companion policy that National Union sold to Crowley at the very same time this policy was issued said a claim exists, a claim is deemed to be made when it is received by, served upon the insured. That definition, that language is not in this policy. And when we want to talk about rewriting the policy, National Union is rewriting the policy to say it's only a claim if it's served upon the insured or if it's received by the insured. But this court in HR acquisition said you don't need to have that. We got your argument. Thank you. We'll take that case under submission. Thank you, Your Honors. Next up is Griffin v. City of Jackson. Thank you. Thank you.